UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

           -against-                                    17-cr-0463 (LAK)

DENVER MCFADDEN,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        On February 22, 2018, defendant pled guilty to one count of traveling in interstate commerce with the intent to engage in illicit sexual conduct and one count of receiving child pornography. Specifically, in January 2017, when he was 67 years old, defendant began corresponding with a 14 year old boy ("Victim") he met on the internet. He received pornographic images from Victim, engaged in lewd video chats with Victim, and, on January 31, 2017, traveled from Kentucky to New York City to meet Victim for sex. Defendant attempted to meet Victim a second time on April 19, 2017, but this time he was arrested by law enforcement. A search of defendant's email account revealed that he had attempted to seduce several other underaged boys in a similar manner.

        On September 5, 2018, the Court sentenced defendant to a below Guidelines sentence of 90 months imprisonment.[1] Among other things, the Court balanced the gravity of defendant's

---

[1] The Sentencing Guidelines recommendation for defendant was 235 to 293 months of imprisonment. According to the government, defendant is scheduled for release on August 30, 2024.

crimes, the need to protect the public against the possibility of future offenses, and the need to provide general deterrence.

Defendant, who now is 71 years old, moves for a sentencing reduction so that he may serve the remainder of his term of imprisonment on home confinement. In his motion, defendant asserts that he suffers from diabetes, coronary artery disease, high blood pressure, high cholesterol, chronic bronchitis, and asthma. He indicates that he has suffered from a heart attack, that he has two stents in his cardiovascular system, that he is on an inhaler for his bronchitis, that he has mobility problems that prevent him from standing for long periods of time, and that he takes 14 daily medications for his various conditions. He claims that he is at very serious risk of very severe disease and possibly death were he to contract COVID-19. The government, which has reviewed defendant's medical records, largely does not contest his assertions about his health conditions and medical history.[2]

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment upon a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[3] Defendant asserts that he has complied with this requirement, and the government does not challenge his assertion.

---

[2] In a footnote, the government asserts that defendant's asthma is "mild" and "intermittent" and that it has been unable to substantiate his claim of "chronic bronchitis," although it acknowledges that he once was treated for bronchitis with a short-term medication. Dkt. 65 at 8 n.5.

[3] 18 U.S.C. § 3582(c)(1)(A).

Where the exhaustion requirement is met, a court may modify a defendant's sentence if (1) there are "extraordinary and compelling reasons" warranting a sentence modification, (2) the modification is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the modification is supported by the factors set forth in 18 U.S.C. § 3553(a).[4] The policy statement, set forth in the Sentencing Guidelines at Section 1B1.13 and the Section 1B1.13 Application Notes, provides that extraordinary and compelling reasons exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[5]

Defendant has provided extraordinary and compelling reasons warranting a sentencing modification. His medical conditions are serious and, particularly in combination with his advanced age, place him at a high risk of death or serious injury if he were to contract COVID-19. These risks would be reduced if defendant were on home confinement because he would be exposed to fewer individuals who might infect him with the virus. The government concedes the presence of extraordinary and compelling reasons for a sentencing modification.[6]

---

[4] 18 U.S.C. § 3582(c)(1)(A)(i).

[5] U.S.S.G. § 1B1.13, cmt.1(A)(ii).

[6] As this Court has stated previously, "the question whether it is bound by the Sentencing Commission's ('USSC') compassionate release policy statement is a much debated question and thus so too are the grounds on which the court may grant relief in a case like this. See, e.g., United States v. Canales, No. 16-cr-212 (LAK), 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (citations omitted); United States v. Merlo, No. 17-cr-0738 (LAK), 2020 WL 3001039, at *2 (S.D.N.Y. June 4, 2020). Because the government acknowledges this confusion and asserts "that the Court need not resolve this question in this case," Dkt. 65 at 8, the Court assumes it is bound by the policy statement. Accordingly, for largely the same reasons that the Court finds that defendant has demonstrated extraordinary and

The dispute turns on the sentencing factors set forth in 18 U.S.C. § 3553(a). "Those factors include: (1) 'the nature and circumstances of the offense and the history and characteristics of the defendant,' (2) 'the need for the sentence imposed' to, among other objectives, 'provide just punishment for the offense,' and (3) the Sentencing Guidelines range."[7]

Defendant's crimes were heinous and their consequences tragic. Victim and his family will suffer for the rest of their lives from the evils defendant imposed upon them. There is an extraordinary public interest in protecting children from sexual predators, and defendant's sentence reflected the need to achieve this goal and punish offenders. Because defendant committed his crimes only several years ago and engaged in a pattern of predatory behavior, the Court has every reason to believe that defendant, if given the opportunity, would return to his criminal activity.

That said, continued incarceration poses dire risks to defendant's health and, indeed, life. For someone with defendant's medical conditions, a prison sentence could amount to a death sentence if he were to contract COVID-19. The government's assertion that defendant's facility and the Bureau of Prisons generally have made serious efforts to protect inmates is reasonable, as is its argument that defendant already has been shown leniency with a below Guidelines sentence premised in part on his health conditions. But given the proliferation of the pandemic, as well as the fact that defendant is being kept in a crowded facility where he is exposed to many individuals who are potential vectors for the virus, the risk of death or serious injury that continued incarceration poses to this particular defendant is unacceptably high.

---

compelling reasons justifying a sentencing modification, it finds that any modification would be consistent with the policy statement outlined above.

[7] *Merlo*, No. 17-cr-0738 (LAK), 2020 WL 3001039, at *3 (quoting 18 U.S.C § 3553(a)).

5

While the risks to defendant cannot be mitigated reasonably, the risks defendant poses to the public can be reduced with strict conditions of release designed to ensure that he is unable to prey on children and that he continues to face punishment for his crimes. Accordingly, defendant's motion for a sentencing modification [Dkt. 63] is granted subject to the following conditions:

1. Defendant shall serve the remainder of his term of imprisonment on home incarceration, to be enforced by GPS Monitoring at the residence approved by probation.

2. Defendant shall serve the first 12 months of supervised release on home incarceration, also to be enforced by GPS Monitoring at the residence approved by probation.

3. Defendant shall participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. He must contribute to the cost of services rendered based on his ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

4. Defendant shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the U.S. Probation Office. He must abide by all rules, requirements, and conditions of the sex offender treatment program(s), including submission to polygraph testing. He must waive his

6

right of confidentiality in any records for mental health assessment and treatment imposed as a consequence of this judgment to allow the probation officer to review his course of treatment and progress with the treatment provider. He shall contribute to the cost of services rendered based on his ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the sex offender treatment provider and/or mental health treatment provider.

5. Defendant shall not have contact with any of the victims in this case. This includes any physical, visual, written, or telephonic contact. Additionally, defendant shall not cause or encourage anyone else to have such contact with any of the victims.

6. Defendant shall not have deliberate contact with any child under 18 years of age, unless approved by the Probation Office. Defendant shall not loiter within 100 feet of schoolyards, playgrounds, arcades, or other places used primarily by children under the age of 18.

7. Defendant shall submit his person, residence, place of business, vehicle, and any property, computers (as defined in 18 U.S.C. § 1030(e)(1)), electronic communications, data storage devices and/or other media under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of his probation/supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a

search may be grounds for revocation.

8. Defendant shall must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice to and approval by the Probation Office.

9. Defendant shall possess or have access to a telephone that will allow video conferencing with the Probation Office.

10. Defendant shall to report to the Probation Office at 400 Gene Snyder U.S. Courthouse, 601 W. Broadway, Louisville, Kentucky, within 72 hours of his release from custody, or at such later time as the Probation Office may specify, to have the GPS tracker affixed to his ankle.

SO ORDERED.

Dated:   July 21, 2020

_____
Lewis A. Kaplan
United States District Judge